FILED
IN OPEN COURT

FEB - 4 ...

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|                              |   |                          |
|------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA     | ) | CRIMINAL NO. 1:15-CR-29  |
|                              | ) |                          |
| v.                           | ) | The Hon. Anthony J. Trenga |
|                              | ) |                          |
| NIKKO ALLANTE MOSES,         | ) |                          |
|    a/k/a "Nikko Granberry"   | ) |                          |
|                              | ) |                          |
|    Defendant.                | ) |                          |

## STATEMENT OF FACTS

The parties stipulate and agree that the allegations in the criminal information about the

defendant, Nikko Allante Moses, and the following facts are true and correct, and that had the

matter gone to trial, the United States would have proven them beyond a reasonable doubt with

admissible and credible evidence:

1.      From at least in or around June 2011 to in or about August 14, 2014, within the

Eastern District of Virginia and elsewhere, the defendant, Nikko Allante Moses, did unlawfully,

knowingly, and intentionally combine, conspire, confederate, and agree with others, including,

but not limited to, Lotoya Yates ("Yates"), Sean Roeser ("Roeser"), James Brown ("Brown")

and Tanesha Underwood ("Underwood"), to unlawfully, knowingly, and intentionally distribute

and possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation

of Title 21, United States Code, Sections 841(a)(1) and 846.

2.      The defendant acted as the leader of this conspiracy, in this role the defendant

engaged in the following:

3.      During the course of and in furtherance of the conspiracy, the defendant and the

defendant's co-conspirators, including, but not limited to, Yates, ordered authentic security

prescription paper from medical supply and other companies. The defendant placed at least three separate orders for prescription paper between June 2011 and August 2014. The prescription paper was delivered to several residential addresses where the defendant, Yates, and/or their co-conspirators lived during the course of the conspiracy.

4.      The defendant and the defendant's co-conspirators, including Yates and Roeser, obtained the names, business addresses, contact information, and/or other provider identifying information, including registration numbers issued by the Drug Enforcement Agency (DEA), of licensed physicians practicing in the Virginia, Alabama, Connecticut, Georgia, Maryland, New York, North Carolina, Ohio, Rhode Island, Pennsylvania, Tennessee, West Virginia, the District of Columbia, and elsewhere.

5.      In furtherance of the conspiracy, the defendant and Yates created accounts for an online database containing registration numbers issued by the DEA and used those accounts to run queries and obtain the registration numbers for over 200 licensed physicians.

6.      The defendant and Yates printed numerous fraudulent prescriptions on the prescription paper using the physicians' identifying information, including the registration numbers issued to them by the DEA. The defendant and his co-conspirators, including Yates, forged the physicians' signatures on the prescriptions.

7.      At all relevant times, the defendant knew that the physicians whose names and DEA registration numbers appeared on the prescriptions did not have prior knowledge of, nor did they consent to, the use of their prescriber information, DEA registration numbers, or signatures on these fraudulent prescriptions.

8.      The vast majority of the fraudulent prescriptions created by the defendant and

Yates were written for 120 tablets of oxycodone; some prescriptions were written for 60 tablets of oxycodone. Each tablet contained approximately 30 milligrams of oxycodone.

9.      During the course of the conspiracy, the defendant and Yates provided the fraudulent prescriptions to co-conspirators, including but not limited to Roeser and Brown, who were paid to act as drivers for the organization. The drivers shuttled other co-conspirators, known as "runners," to pharmacies located throughout the Midwest and East Coast, including the Eastern District of Virginia, to fill the fraudulent prescriptions and obtain oxycodone. At all times during the course of the conspiracy the drivers, including but not limited to Roeser and Brown, knew the prescriptions were fraudulent.

10.     The defendant and the defendant's co-conspirators, including Yates, wrote the prescriptions for fictitious persons or for real persons who were not actual patients of the identified physicians on the prescriptions. When the defendant and co-conspirator Yates used fictitious patient names on the prescriptions, they often used the name of the runner who presented the prescription, or a variant thereof.

11.     To facilitate creating fraudulent prescriptions in the names of real persons, the defendant and/or his co-conspirators obtained identification cards belonging to third parties. The defendant and his co-conspirators used these identification cards to create fraudulent prescriptions by copying the personally identifiable information of these third parties, such as their real names, addresses, and dates of birth, as patient information on the prescription.

12.     During the course of the conspiracy, the defendant and Yates provided the drivers, including Roeser and Brown, with, among other things, the fraudulent prescriptions and cash to pay for the prescriptions to be filled before the drivers took the runners to the pharmacies. On

certain occasions, the drivers were provided with identification cards of third parties for the runners to use while presenting fraudulent prescriptions.

13.     After the runners obtained the filled prescriptions, the drivers and runners provided the defendant with the oxycodone tablets. The defendant paid each of the drivers and runners hundreds of dollars in cash for every prescription that was filled successfully.

14.     The defendant would then resell the pills for profit.

15.     On or about May 12, 2014, the defendant sold a total of 50 tablets to a confidential source for profit. Each pill contained 30 mg of oxycodone.

16.     On or about May 29, 2014, the defendant sold a total of 100 tablets to a confidential source for profit. Each pill contained 30 mg of oxycodone.

17.     On or about June 12, 2014, the defendant sold a total of 150 tablets to a confidential source for profit. Each pill contained 30 mg of oxycodone.

18.     On or about July 17, 2014, the defendant sold a total of 120 tablets to a confidential source for profit. Each pill contained 30 mg of oxycodone.

19.     During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution or possession with the intent to distribute, or it was reasonably foreseeable to the defendant that in furtherance of the conspiracy his co-conspirators were involved with the distribution or possession with the intent to distribute, 60,000 tablets each containing 30 milligrams of oxycodone, which is the oxycodone (actual) equivalent of at least 10,000 kilograms but less than 30,000 kilograms of marijuana.

20.     The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific

4

intent to violate the law.  The defendant acknowledges that the foregoing Statement of Facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Dana J. Boente
United States Attorney

By:  _____

Caroline Friedman (LT)
Special Assistant United States Attorney

Carina Cuellar
Assistant United States Attorney

## Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
NIKKO ALLANTE MOSES
Defendant

## Defense Counsel's Signature

I am the attorney for the defendant, NIKKO ALLANTE MOSES.  I have carefully reviewed the above Statement of Facts with the defendant.  To my knowledge, the defendant's decision to stipulate to these facts is informed and voluntary.

_____
CHARLES BURNHAM, ESQ.
Counsel for the Defendant